In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-111 CR


NO. 09-08-112 CR


____________________



EX PARTE MATTHEW CHERRY


 




On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause Nos. 92441-A and 92442-A






OPINION



 These are appeals by the State from the trial court's order granting relief on Matthew
Cherry's application for writ of habeas corpus. We reverse and render judgment denying
Cherry's application and reinstate the deferred adjudication orders.

Background


 On August 1, 2005, Cherry pled guilty without a plea bargain agreement to two
charges of indecency with a child. At the plea hearing, Carl Parker served as counsel for
appellant. On August 18, 2005, Parker filed a motion to withdraw as Cherry's counsel, and
Parker stated in the motion that "Defendant has requested we withdraw our
representation. . . ." On September 7, 2005, another attorney, Patrick O'Fiel, filed a motion
to withdraw Cherry's guilty plea. The next day, another attorney, Joseph C. "Lum"
Hawthorn, filed a motion to substitute as Cherry's counsel. On September 9, 2005,
Hawthorn filed a "Supplemental Motion to Withdraw Plea of Guilty." On the same date,
Hawthorn filed a motion for continuance, in which he stated he could not appear at the
sentencing hearing, which was scheduled for September 12, 2005.

 The trial court conducted Cherry's sentencing hearing on September 16, 2005. At the
beginning of that proceeding, the trial court stated that Cherry was present with his counsel,
Carl Parker, and Cherry stated, "I'd like to have Lum Hawthorn as my attorney, and I would
like to make a motion for withdrawing of my plea." The trial court responded as follows:

 The request to have Mr. Lum Hawthorn to substitute in as your attorney
is going to be denied since Mr. Carl Parker was your attorney at the time the
Court accepted your guilty pleas and this case set for sentencing. Because of
the lateness of the request, that is denied.


 Your request to withdraw your plea also is denied. The Court had
inquired of you at the time you entered your plea if you had done so of your
own free will, you assured the Court that you had and; therefore, that request
is also denied.


 After hearing statements from Cherry, counsel, Cherry's parents, and the victims'
families, the trial court deferred further proceedings in both cases, placed Cherry on
community supervision for ten years, and assessed a fine of $2,500. On January 17, 2007,
Cherry filed an application for writ of habeas corpus, in which he argued the trial court
violated his right to counsel by denying him his counsel of choice at the sentencing hearing
despite the fact that Hawthorn was present on the date of the hearing and was ready to
proceed. See Tex. Code Crim. Proc. Ann. art. 11.072 (Vernon 2005). The court denied
Cherry's application for a writ of habeas corpus and issued findings of fact and conclusions
of law, in which it concluded as follows:

 The trial court's rulings during the court proceedings in this cause were
based upon "important considerations relating to the integrity of the judicial
process and the fair and orderly administration of justice." Gonzalez v. State,
117 S.W.3d 831, 837 (Tex. Crim. App. 2003). The trial court's actions did not
arbitrarily or unreasonably interfere with Petitioner's choice of counsel.

 

 It is the decision of the Court that relief sought by Petitioner be denied
without a hearing.


Cherry filed a notice of appeal.

 After noting that the trial judge who presided at Cherry's sentencing had retired and
that another judge ruled on Cherry's applications for writs of habeas corpus, this Court
reversed and remanded the cause for a new habeas hearing because the basis of the habeas
court's decision to deny relief was not sufficiently clear from the record "to permit us to
determine the merits of Cherry's claims that his rights were violated by depriving him of his
choice of paid counsel." Ex parte Cherry, 232 S.W.3d 305, 307-08 (Tex. App.--Beaumont
2007, pet. ref'd). In our opinion, we noted that the new proceeding


 may include, if deemed necessary by the trial court, a development of the
factual record to determine whether Cherry's chosen retained counsel appeared
and was ready to proceed on the merits of the sentence to be imposed on
September 16, 2005, to identify the facts relied upon to determine that the
motions to substitute were filed too late, as well as to allow the habeas court
to make factual findings that demonstrate how granting Cherry's motions to
substitute would have adversely affected the integrity of the judicial process
or the fair and orderly administration of justice.


Id. at 308. After conducting a new hearing on Cherry's applications for writs of habeas
corpus, the trial court entered new findings of fact and conclusions of law, in which it
concluded as follows, in pertinent part:

 [U]pon further reflection, including review of the additional evidence of the
transcript of the September 12, 2005 hearing, that allowing Cherry to replace
his legal counsel as initially requested eight (8) days prior to his sentencing
hearing on September 16, 2005, would not have adversely affected the
integrity of the judicial process or the fair and orderly administration of justice. 
Even though great deference is given to [the predecessor trial judge]'s
respected abilities and fairness as a judge, there seems little harm to the
integrity of the judicial process or to the fair and orderly administration of
justice would have occurred by allowing Cherry to substitute attorneys for
sentencing. This could have been accomplished without delaying the
sentencing hearing.


The trial court entered an order that vacated the deferred adjudication orders previously
entered and ordered Cherry's cases "to be placed on an active court docket for sentencing."
The State then filed this appeal, in which it raises three issues for our consideration. See
Tex. Code Crim. Proc. Ann. art. 44.01(k) (Vernon Supp. 2007) (The State may appeal a
decision that grants a writ of habeas corpus under Article 11.072.).

Issue Three


 In its third issue, the State argues "[t]he habeas court erred in finding that the trial
judge acted outside the bounds of wide latitude." As part of its argument of this issue, the
State asserts that the relief Cherry seeks is not cognizable as a writ of habeas corpus under
article 11.072 because Cherry could have sought relief by filing an appeal, but failed to do
so. See Tex. Code Crim. Proc. Ann. art. 11.072 § 3(a) ("An application may not be filed
under this article if the applicant could obtain the requested relief by means of an appeal
under Article 44.02 and Rule 25.2, Texas Rules of Appellate Procedure."). Because this
argument is dispositive, we address it first. See Tex. R. App. P. 47.1.

 Although the trial court indicated upon remand that it had reviewed additional
evidence in the form of the transcript of the September 12 hearing, that evidence would have
been available to Cherry had he filed an ordinary appeal. See Tex. R. App. P. 34.6(b)
(Appellant may request that the court reporter prepare a reporter's record of proceedings.). 
With the exception of said transcript and a statement by Cherry's desired counsel that he was
present and ready to proceed, the record does not indicate that the trial court heard or
reviewed any additional evidence. Therefore, the issues raised by Cherry in his applications
for writs of habeas corpus are not cognizable because he could have obtained the requested
relief by filing appeals. See Tex. Code Crim. Proc. Ann. art. 11.072 § 3(a); Jack v. State,
871 S.W.2d 741, 744 (Tex. Crim. App. 1994) (Courts of Appeals have jurisdiction over cases
in which the appellant pled guilty without a plea bargain agreement.). We sustain issue three
to that extent. Accordingly, we reverse the trial court's order vacating Cherry's deferred
adjudication orders and render judgment denying Cherry relief on his applications for writs
of habeas corpus.

 REVERSED AND RENDERED.


 

 STEVE McKEITHEN

 Chief Justice


Submitted on May 15, 2008

Opinion Delivered June 25, 2008

Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.


DISSENTING OPINION

 The majority holds that because appeal was an adequate remedy for Cherry's choice-of-counsel complaint, he is now barred from challenging the trial court's original decision
denying his choice of counsel. I disagree that appeal is a sufficient remedy for three reasons.

 First, the trial court's findings from the habeas hearing are important to the resolution
of whether Cherry was wrongfully deprived of his choice of counsel at his sentencing
hearing. The trial court that conducted the habeas hearing after our remand found:

 [U]pon further reflection, including review of the additional evidence of the
transcript of the September 12, 2005 hearing, that allowing Cherry to replace
his legal counsel as initially requested eight (8) days prior to his sentencing
hearing on September 16, 2005, would not have adversely affected the
integrity of the judicial process or the fair and orderly administration of justice. 

 

The majority's decision effectively forces Cherry to rely on an attorney he did not want to
represent him to create a record sufficient for his appeal; however, Cherry's attorney during
the sentencing hearing failed to do so here. Under the majority's logic, even had Cherry
perfected an appeal, he would be required to await the imposition of a sentence and the
outcome of his appeal before he could enforce his right to his counsel of choice. This would
all be done under the premise that the trial court's order denying the attorney's discharge
would be reversed on a record that existed at that time, a record which we previously held
was insufficient to determine whether the trial court erred in denying his choice of counsel. 
Ex parte Cherry, 232 S.W.3d 305, 307-08 (Tex. App.-Beaumont 2007, pet. ref'd). Even if
his appeal proved successful, only after being forced to suffer a trial result procured by an
attorney not of his choice, according to the majority, Cherry would then have the privilege
of retrying his case. 

 Such a procedure is unreasonable and unjust to the parties. See generally Terrell v.
Green, 88 Tex. 539, 31 S.W. 631, 634 (1895) (holding that right of remedy on appeal was
inadequate to address issue concerning which attorney would represent a party, thus
extending relief by writ of mandamus). I would hold that remedying Cherry's choice-of-counsel complaint was not possible in an ordinary appeal under the facts of this case. 

 Second, the attorney the trial court required to represent Cherry failed to perfect an
appeal and the appellate deadlines on his case expired. Therefore, section 11.072, section
3(a) of the Texas Code of Criminal Procedure does not apply to him because Cherry could
not obtain adequate relief through an appeal at the point he filed his application for writ of
habeas corpus. The majority reads that language of section 11.072 of the Code of Criminal
Procedure to restrict habeas relief if an appeal could have remedied the error. But the statute
in issue restricts relief through habeas only when "the applicant could obtain the requested
relief by means of an appeal." Tex. Code Crim. Proc. Ann. art. 11.072 § 3(a) (Vernon
2005). Cherry could not obtain relief on appeal at the point he filed his writ of habeas
corpus.


 Third, the right to assistance of counsel in criminal cases is guaranteed by both the
United States and Texas constitutions, as well as by Texas statute. See U.S. Const. amend.
VI; Tex. Const. art I, §10; Tex. Code Crim. Proc. Ann. art. 1.05 (Vernon 2005). The
United States Supreme Court regards the right to select counsel of one's choice "as the root
meaning of the constitutional guarantee." U.S. v. Gonzalez-Lopez, 548 U.S. 140, 147-48,
126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Choice of counsel is an important right, as right-to-counsel issues are analyzed as "structural error." Id. at 148-49; see also Johnson v. State,
169 S.W.3d 223 (Tex. Crim. App. 2005) "A structural error affects 'the framework within
which the trial proceeds, rather than simply [being] an error in the trial process itself.'"
Johnson, 169 S.W.3d at 237 (quoting Arizona v. Fulimante, 499 U.S. 279, 310, 111 S.Ct.
1246, 113 L.Ed.2d 302 (1991)). "The right to assistance of counsel contemplates the
defendant's right to obtain assistance from counsel of the defendant's choosing." Gonzalez
v. State, 117 S.W.3d 831, 836-37 (Tex. Crim. App. 2003). 

 Right-to-counsel issues that arise under the Sixth Amendment are traditionally
addressed in criminal cases through writs of habeas corpus. See Robinson v. State, 16
S.W.3d 808, 810 (Tex. Crim. App. 2000) (post conviction writ is the preferred method for
"gathering the facts necessary to substantiate such a Sixth Amendment challenge"); Torres
v. State, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) ("[I]n most ineffective assistance
claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately
evaluate such claims."). After the record was further developed by the trial court at Cherry's
habeas hearing, the trial court apparently agreed that Cherry had been wrongly deprived of
his right to choice of counsel at his prior sentencing hearing. The trial court's findings
following the habeas hearing remedied the problem with Cherry's inadequate record that
existed when we initially reviewed this matter and then remanded his case for further
development of the record. Ex parte Cherry, 232 S.W.3d at 307-08. Thus, the appeal on the
record that is currently available containing factual findings central to Cherry's case would
not have been available in an ordinary appeal. 

 Under the Texas Constitution, the Texas legislature is not empowered to suspend the
writ of habeas corpus. Tex. Const. art. I, § 12 ("The writ of habeas corpus is a writ of right,
and shall never be suspended."). In my opinion, the majority interprets article 11.072 section
3(a) to suspend the writ of habeas corpus for challenges touching upon the type of structural
error for which writs of habeas corpus provide a traditional remedy. 

 In summary, I disagree with the majority's conclusion that the record, as it existed for
a hypothetical appeal, would have allowed Cherry to obtain relief. Second, when Cherry's
chosen counsel finally challenged the trial court's decision through a writ of habeas corpus,
Cherry's right to appeal no longer provided a potential remedy. Finally, the majority's
interpretation of section 11.072's language to restrict habeas relief in a case raising an issue
of structural error violates article one section twelve of the Texas Constitution. I would hold
that habeas corpus was available to Cherry under the circumstances of this case to remedy
his choice-of-counsel complaint. See Gonzalez-Lopez, 548 U.S. at 148 ("Deprivation of the
right is 'complete' when the defendant is erroneously prevented from being represented by
the lawyer he wants, regardless of the quality of the representation he received."); and see
Robinson, 16 S.W.3 at 813. 

 Because the majority concludes that appeal was available, when in my opinion it was
not, and interprets the statute to suspend the writ of habeas corpus to prevent the review of
structural error, I dissent. 






 ____________________________

 HOLLIS HORTON

 Justice


Dissent Delivered

June 25, 2008